DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant, Stephen P. Cornelious, appeals from his conviction and sentence as imposed by the Wayne County Court of Common Pleas for trafficking in cocaine and heroin.
 {¶ 2} An indictment was filed on December 16, 2004, charging Defendant with trafficking in drugs, cocaine, under R.C.2925.03(A)(2), a first degree felony, and trafficking in drugs, heroin, under R.C. 2925.03(A)(2), a third degree felony. A jury trial was held on March 14 and 15, 2005, after which the jury returned a verdict of guilty on both counts. Defendant was sentenced on April 15, 2005 to four years in prison for count 1, trafficking in cocaine, a second degree felony, and fourteen months in prison for count 2, trafficking in heroin, a fourth degree felony. The two sentences were ordered to run concurrently.
 {¶ 3} Defendant now appeals both his sentence and conviction, asserting four assignments of error for our review.
 ASSIGNMENT OF ERROR I
"The court improperly denied Defendant's motion in limine prohibiting the introduction of testimony and supplemental report from the B.C.I. expert when he testified to a significantly different weight than report earlier submitted to defense in discovery."
 {¶ 4} In his first assignment of error, Defendant argues that the trial court erred in permitting the introduction of laboratory reports regarding the drugs found and in permitting the State's witness to testify about those reports. We find that any error by the trial court was harmless beyond a reasonable doubt.
 {¶ 5} On December 21, 2004, well before trial, Defendant was provided with a copy of a report completed by the State's B.C.I. expert, Anthony Ferchau. That original report stated that the substance analyzed was powder cocaine in the amount of 9.07 grams. According to Defendant's Appellate brief, either on the day before trial or prior to trial on the same day, he was provided with a copy of an updated report from the B.C.I. expert which provided that the powder cocaine at issue in this case weighed a total of 18.77. Mr. Ferchau testified that he had made a mistake in the first report. Defense counsel objected to the updated report being introduced into evidence, and the trial court overruled his objection.
 {¶ 6} R.C. 2925.51(A) provides that, in trials regarding drug offenses, a lab report which analyzes and determines whether a substance is in fact a controlled substance will constitute prima facie evidence of the content, weight, and identity of the substance if certain requirements are met. An additional requirement is that the State serve the defendant with a copy of the lab report prior to trial. R.C. 2925.51(B). Failure to serve the defendant with a copy of the report renders the report inadmissible at trial. State v. Stephens (1998),126 Ohio App.3d 540, 551. In this case, Defendant was served with the original report, and then just prior to trial, was served with the supplemental report.
 {¶ 7} While the supplemental report may have been untimely served upon Defendant, we note that even if the State had failed to provide the lab report altogether, it would not prevent live testimony from the individual who performed the analysis. Id. at 552. See also, State v. Denney (Oct. 22, 1980), 1st Dist. No. C7-90765; State v. Fluker (Feb. 25, 1982), 8th Dist. No. 43782;State v. Nemeckay (Dec. 20, 1990), 8th Dist. No. 57235. Thus, even if the trial court erred in admitting the reports, any error was harmless.
 {¶ 8} R.C. 2925.51 provides that the lab report will be considered prima facie evidence of the content, weight, and identity of the substance analyzed. It does not speak to live testimony in any manner, nor exclude any other method of proving the identity of the substance. Further, while the failure to receive the lab report in a timely manner may have inhibited the effectiveness of Defendant's cross-examination, the legislature has provided that Defendant may independently test any substance tested by BCI. R.C. 2925.51(E). In the instant matter, Defendant did not request an independent test of the seized substances; he does not contest the content or identity of the substances. Additionally, Defendant's counsel had the opportunity to cross-examine Mr. Ferchau during trial regarding the validity of the lab results. As Mr. Ferchau testified that the analysis of the substance led to a finding that they were controlled substances and testified to the quantities of those drugs, and how he had mistakenly written the wrong weight on the first report, any error by the trial court in admitting the underlying reports was harmless. Stephens, 126 Ohio App.3d at 552. Accordingly, Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"The trial court erred in sentencing Defendant because it sentenced Defendant to more than the authorized minimum prison sentence and because the court violated the dictates of Apprendi when it sentenced Defendant to more than the `statutory maximum.'"
 {¶ 9} In his second assignment of error, Defendant argues that the trial court violated the Sixth Amendment by sentencing him to more than a minimum prison term. Additionally, Defendant argues that the trial court erred in failing to make one of the requisite findings under R.C. 2929.14(B) for imposing a non-minimum sentence. We find that Defendant's argument lacks merit.
 {¶ 10} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Ohio Supreme Court found that Ohio's sentencing structure was unconstitutional to the extent that it required judicial fact finding. Id. at paragraphs one through seven of the syllabus. "In constructing a remedy, the Foster court excised the provisions it found to offend the Constitution, granting trial court judges full discretion to impose sentences within the ranges prescribed by statute." State v. Gordon, 9th Dist. No. 23009,2006-Ohio-2973, at ¶ 8, citing Foster, supra. Accordingly, Defendant may not premise error upon the failure of the trial court to make certain findings no longer required by statute. Id. at ¶ 20. As Defendant's sole contention is that the trial court failed to make the required statutory findings to impose a non-minimum prison term, his second assignment of error is overruled.[1]
 ASSIGNMENT OF ERROR III
"The Defendant's conviction was against the manifest weight of the evidence."
ASSIGNMENT OF ERROR IV
"The court erred by failing to dismiss the case pursuant to Crim.[R.] 29."
 {¶ 11} In his third and fourth assignments of error, Defendant argues that his conviction was both against the manifest weight of the evidence and was based upon insufficient evidence.
 {¶ 12} While sufficiency of the evidence and manifest weight of the evidence are legally distinct issues, we note that a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.Cuyahoga Falls v. Scupholm (Dec. 13, 2000), 9th Dist. Nos. 19734 and 19735, at 5. Sufficient evidence is required to take a case to the jury, therefore, a finding that a conviction is supported by the weight of the evidence necessarily includes with it a finding of sufficiency of the evidence. State v. Roberts
(Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. Consequently, we will focus our discussion on whether Defendant's convictions were against the manifest weight of the evidence.
 {¶ 13} When a defendant maintains that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
This court may only invoke the power to reverse based on manifest weight in extraordinary circumstances where the evidence presented at trial weighs heavily in favor of a defendant. Id. Absent extreme circumstances, an appellate court will not second-guess determinations of weight and credibility. SykesConstr. Co. v. Martell (Jan. 8, 1992), 9th Dist. Nos. 15034 and 15038, at 5-6.
 {¶ 14} Defendant was convicted under R.C. 2925.03(A)(2) for trafficking in cocaine, a second degree felony, and for trafficking in heroin, a felony of the fourth degree. R.C.2925.03(A)(2) provides that "[n]o person shall knowingly * * * "[p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale[.]"
 {¶ 15} Charles Ellis, a senior agent with the Medway Drug Enforcement Agency testified that on December 6, 2004, an informant was sent to a house located at 567 East Bowman Street and made a purchase of $40.00 worth of heroin at about 3:12 p.m. Two search warrants were thereafter issued for 567 and 567½ East Bowman Street, the upstairs and downstairs units of the same house.
 {¶ 16} The search warrants were executed at 8:55 p.m. on the same day. Officer Chad Stanton of the Medway Drug Enforcement Agency testified that he was assigned to go to the front door of the residence while the warrant was executed to make sure that the front door was secure and that no one tried to exit. He stated that he heard the teams make entry from the side and back doors of the house, and he heard the teams announce themselves at the door. After entry had been made, Officer Stanton saw Defendant attempt to leave the premises via the front door. He stopped Defendant and ordered him to the ground. Defendant, followed by another male, then went back into the house. Officer Stanton stated that he "held them at cover until the entry teams could secure them."
 {¶ 17} At that time, the drug enforcement agency officers found, on Defendant's person, the $40 used to buy the heroin. The $40 in question was made up of one $10 bill and six $5 bills; all seven bills found on Defendant matched the serial numbers that were used in the earlier heroin transaction.
 {¶ 18} The search revealed a large quantity of both heroin and cocaine inside of the house which was packaged in a way that indicated it was being sold in small amounts; a point which Defendant does not contest. While Defendant has pointed out that his name was not on the lease of either the upper or lower units at 567 East Bowman Street, the search revealed a video tape containing images of him in the attic of the house, which the agents believed showed that Defendant had access to the attic of the house. Additionally, one of the residents of the house testified that Defendant had been living in the downstairs unit for two or three months.
 {¶ 19} Based on the drugs that were found, Defendant's videotape found in the attic, and the presence of the seven bills from the heroin purchase located on Defendant's person, Agent Ellis, after informing Defendant of his constitutional rights, proceeded to interview him. Agent Ellis stated that he had asked Defendant if he knew that there was crack cocaine in the residence, to which Defendant replied that he was aware of the presence of the drugs. Asked if his fingerprints would be found on the crack cocaine, Defendant responded to Agent Ellis, "Yes, probably so." Defendant denied that the drugs were his and stated that they probably belonged to the upstairs tenant, Natasha Billingsly.
 {¶ 20} Ms. Billingsly testified that on the day the search warrants were executed she remembered telling the officers that Defendant was storing drugs in her apartment. She further stated that she had told the officers that Defendant had been giving her money in exchange for her permission to keep drugs in her apartment. Ms. Billingsly testified that Defendant had even paid her rent in order to be able to keep his drugs upstairs.
 {¶ 21} Defendant presented testimony contradicting the State's evidence of his guilt. However, in a jury trial, matters of credibility of witnesses are primarily for the trier of fact, therefore, we must give deference to the jurors' judgment. SeeState v. Lawrence (Dec. 1, 1999), 9th Dist. No. 98CA007118, at 13; State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. We will not overturn the verdict on a manifest weight challenge simply because the jury chose to believe the evidence offered by the prosecution. State v. Merryman, 9th Dist. No. 02CA008109, 2003-Ohio-4528, at ¶ 28. See, also, Statev. Warren (1995), 106 Ohio App.3d 753, 760.
 {¶ 22} From the evidence presented, a reasonable jury could find that Defendant was guilty of trafficking in drugs. As we stated above, on a manifest weight review, we cannot order a new trial unless it is shown that the jury clearly lost its way and created a manifest miscarriage of justice. Otten,22 Ohio App.3d at 340. The evidence set forth does not persuade us that the extreme circumstances necessary to reverse a case on a manifest weight challenge were present. Having found that the weight of the evidence supports Defendant's convictions, any issues concerning sufficiency of the evidence must be similarly disposed of. See Roberts, supra, at 8. Defendant's third and fourth assignments of error are therefore overruled.
 {¶ 23} We overrule Defendant's assignments of error and affirm the decision of the Wayne County Court of Common Pleas.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Carr, J. Moore, J. concur.
[1] We note that Defendant has not challenged the constitutionality of the imposition of his sentence, and we decline to sua sponte remand on grounds not argued.